Kinkead, J.
The submission is upon a motion to dissolve a temporary restraining order heretofore allowed in this case. The petition sets forth the passage by the city council of the city of Columbus of an ordinance (April 25, 1910, No. 25,163) entitled "An ordinance to provide for the establishment of a hack stand and stand for other vehicles for' hire in the city of Columbus Ohio.” It is averred that the ordinance was disapproved by the mayor, and thereafter was passed over his veto by the city council.
*380 The ordinance, in substance, establishes in the city of Columbus a stand or stopping place for hackney coaches, cabs, coaches, express wagons, transfer wagons or other vehicles or carriages for the conveyance of passengers’ baggage or freight, or for hire. It points out the location immediately on the north side of the sidewalk on the north front of the state house in Broad street, designating the points between which the vehicles may stand and the manner in which they shall stand. The basis of the claim for injunction by the city solicitor rests upon two grounds: One, that the establishment of a hack stand in accordance with the city ordinance will result in a public nuisance; and, second, that payment for the publication of the ordinance will be an illegal expenditure and a misapplication of the funds of the municipal corporation.
The prayer is that John T. Barr as clerk may be temporarily restrained from recording the ordinance and publishing the same, and that IT. Clayton Cain as auditor be restrained from drawing any warrant for the payment of the cost of publication.
It is urged in support of the motion for dissolution of the temporary restraining order that the remedy pursued by the city is not a proper-one; that there is no ground in equity for granting the relief prayed for; that there' is an adequate remedy at law; that if the establishment of a hack stand and the occupancy of the. places designated • in the ordinance for that purpose will result in a nuisance, the validity of -the ordinance, if it- is invalid, can be tested in an action at law or in a criminal action, punishing any one for obstructing the street.
It is contended on behalf of the city that the ordinance is invalid; that the city council had no authority to pass the ordinance, because it is a part of their statutory duty to care for the streets of the city -and to keep them free from nuisance. It would be necessary in support of this claim by the city for it to show by a proper allegation which would pass muster upon a demurrer that the result of the hack stand would be a nuisance. A nuisance is both a tort and a misdemeanor, and there is an adequate remedy against the same. It is far from being clearly demonstrated by the allegations in the petition that the threatened operation under the ordinance would result in a nuisance. *381 The' petition does not contain sufficient allegations of facts to show that, under the particular conditions and circumstances as shown in the ordinance itself and by the facts alleged in the petition^ it would result in a nuisance such as to warrant the court in granting the restraining order against the acts that are still essential to placing the ordinance in full force and operation in law. The want of power on the part of council must be clearly apparent and it must also appear that the injury would be irreparable.
The allegation in the petition that plaintiff has no adequate remedy in the premises and no legal remedy whatsoever is of no legal consequence. Facts must be -alleged which will disclose to the court that there is no other remedy. Of course, a misapplication of funds would furnish ground under certain conditions and circumstances for the granting of injunctive relief, but it must also be clear that the funds are about to be legally expended, and as this expenditure for the publication of the ordinance in question is so closely identified with the ordinance itself, and with the claim that the city was without power to enact it, I am of the opinion that this ground is not well taken. It is not well taken, because it is not at all clear from the ordinance itself, and the facts alleged as already stated, that operation under the ordinance will result in a nuisance. It may and it may not be, and if it- is, there is a way of determining the question by proper proceedings at law.
The dimensions of the streets are not given. It would perhaps take evidence to clearly demonstrate that standing hacks under particular circumstances and conditions would result in a nuisance. It may be a matter of sentiment. No one can tell whether it is from the facts alleged in the petition, because enough are not stated to enable us to so declare. But one allegation prompts this suggestion. It is said in the petition that ‘ ‘ said grounds are the only open public grounds in the central portion of said city, and said grounds and buildings are visited daily by large numbers of people, both residents of the city of Columbus and visitors coming thereto from all parts of the state of Ohio and of the other -states. ’ ’
It has been urged by plaintiff’s counsel that this court has heretofore established the precedent, sanctioning this mode of *382 procedure in presenting the question, and cites the case recently before another branch -of this court touching the validity of the ordinance making certain requirements of motorinen. I am not aware of any other similar cases, but the case just referred to is clearly distinguishable from the one now under consideration for the reason that an ordinance of that character was clearly beyond -the power of council to enact, which was at once apparent from the allegations of the petition and the law.
Section 1536-100, paragraph 9 (Section 3632, General Code), confers .the right upon municipal corporations "to regulate the use of carts, drays, wagons, hackney coaches, omnibuses, automobiles,” etc. Section 1536-332 (Section 3635, General Code) confers the power upon the councils of municipal corporations "to establish stands for hackney coaches, cabs or omnibuses, enforce the observance and use thereof. ’ ’ These provisions are exclusive and constitute an exception to the section cited by counsel for the plaintiff which gives the power and control of the city over its streets, and especially makes its duty to keep its streets free from nuisance. This latter statute prescribing this duty has no direct relation to its power to pass an ordinance of the character in question. The city acting under the authority of this statute to provide hackney coach stands can not infringe upon property rights of individuals by establishing them adjacent to private abutting owners. This is shown in the case of Branahan v. Hotel Co., 39 O. S., 333, which held the ordinance establishing a hack stand in front of a hotel to be without authority of law and constituting no jurisdiction for obstructing the plaintiff’s right of access to the street.
But a municipal ordinance which establishes a hack stand in front of public property presents a different proposition. ■ An ordinance of this character, where it is reasonable, and the hack stand does not constitute a material obstruction or- interference with the street is held to be valid and clearly within the municipal power. (See Pennsylvania Co. v. City of Chicago, 181 Ill., 289.)
In Masterson v. Short, 33 How. Prac., 481, common council of the city of New York having, in pursuance of its power, established hackney coach stands, the courts refused to grant an., .in *383 'junction restraining the occupancy of such stand, even though it was in front of a livery stable of the plaintiff. This case is interesting, because of the quotation of Chancellor Kent discussing the powers of the municipality, which are broad and are to be exercised with sound discretion and with a liberal spirit, commensurate with the growing wants and prosperity of a great metropolis. “These statutes,” the learned commentator says, “are general, made in aid and confirmation of the general corporate powers on the subject and sometimes with the avowed wish and consent of the corporation, such as the laws relating to hackney coaches, butchers,” etc. The court in speaking of the matter says that:
“The system of hackney coaches standing at designated places in the streets of a city grew out of the necessity of meeting the public demands. A demand arose in cities for means of transit from point to point, other than by walking. As the city increased in extended territory, and became more populous, the demand increased. This gave rise to a class of men who procured one or more vehicles, according to their means, and plied the streets for hire. It was soon found necessary to place these men under special police regulations, and-as one of those regulations to assign certain places in the streets where they might stand waiting for customers. Such regulation was necessary for the control of the haekmen and for the convenience of the public. Its object was to prevent the haekmen from traveling with their empty vehicles in search of custom in streets otherwise sufficiently crowded, and also to prevent their stopping and remaining for any considerable time at inconvenient places, but the great object was to have hacks standing at various points where the public would be most likely to want them, and where they would cause the least inconvenience to other vehicles or injury to the surrounding property. ’ ’
The court then enters into the history of the hackney .coaches in England and this country, which is interesting as well as instructive. The question in that case was the power of the council to establish hackney coach stands under the general charter of the city. But the statute in Ohio is clear and specific, authorizing the city of Columbus to establish hackney coach stands. It would seem to be beyond any doubt that the relief prayed for by the plaintiff should not be granted in view of the powers con *384 ferred upon the city by the statute above named. It is true that the city should not, by ordinance or otherwise, violate the duty enjoined upon it by law to keep the streets free from nuisance. But the point here made, and relied upon in deciding this case, is not only that the city has acted within its statutory power, but that it is not apparent from the facts alleged in the petition that the ordinance in question would authorize the establishment of a nuisance. If the parties acting under the authority of this ordinance do maintain or establish a nuisance, there is an adequate remedy at law.
There is another rule of law that has a slight bearing upon the question. It is stated in 22 Cyc., 892, that:
“The validity or invalidity of a municipal ordinance, being a purely legal question, a court of equity will not assume to determine it on an application for an injunction, where no irreparable injury is impending and no multiplicity of suits threatened. In such case the invalidity of the ordinance must be established at law.”
A similar phase of the question appears in Arnold v. Village of Van Wert, 3 C. C., 544, where it is held:
“A court of equity will not interfere to restrain a municipal corporation, its mayor and marshal, from enforcing an ordinance prohibiting the sale of intoxicating liquors within the corporation upon the ground of the illegality of such ordinance until the right of the complainant is established at law. ’ ’
The power of the city, however, to pass the ordinance being so clearly defined by law, and the question whether or not any one operating under its provisions may or may not permit such acts as will amount to a nuisance being a question to be determined in another way, injunctive relief can not, therefore, be granted. The motion to dissolve the temporary restraining .order heretofore allowed is, therefore, granted, and a judgment may be accordingly entered.